IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INMOTION IMAGERY<br>TECHNOLOGIES, LLC, | §<br>§<br>§ | |
| v. | § | CASE NO. 2:12-CV-624-JRG-RSP |
| | § | |
| DELL, INC. | §<br>§ | |

## CLAIM CONSTRUCTION
## MEMORANDUM AND ORDER

On August 8, 2013, the Court held a hearing to determine the proper construction of the

disputed claim terms in United States Patents No. 6,526,219 and 8,150,239.  After considering

the arguments made by the parties at the hearing and in the parties' claim construction briefing

(Dkt. Nos. 45, 51, and 52),[1] the Court issues this Claim Construction Memorandum and Order.

---

[1] Citations to documents (such as the parties' briefs and exhibits) in this Claim Construction
Memorandum and Order shall refer to the page numbers of the original documents rather than
the page numbers assigned by the Court's electronic docket.

**Table of Contents**

BACKGROUND .......................................................................................................... 3

LEGAL PRINCIPLES ............................................................................................... 4

CONSTRUCTION OF AGREED TERMS ............................................................... 6

CONSTRUCTION OF DISPUTED TERMS ............................................................ 7

    A. "recording" ................................................................................................... 7

    B. "recorded program" ..................................................................................... 8

    C. "separately storing," "information including a subset of the images," and "separately storing information including a subset of the images" ......................... 9

    D. "windows" ................................................................................................... 16

    E. "user" ........................................................................................................... 20

    F. "user-selecting a displayed image" ........................................................... 20

    G. "segments of the program which are separated in time" and "segments of the video program that are spaced apart in time" .............................................. 21

    H. "subset of the frames" ................................................................................ 23

    I. "motion imagery" and "segment including motion imagery" .................... 24

    J. "video program" ......................................................................................... 27

    K. "time-sequential frames representative of motion imagery" .................... 29

CONCLUSION ........................................................................................................ 30

## BACKGROUND

Plaintiff brings suit alleging infringement of United States Patents No. 6,526,219 ("the '219 Patent") and 8,150,239 ("the '239 Patent") (collectively, the "patents-in-suit").  The patents-in-suit are both titled "Picture-Based Video Indexing System."  In general, the patents-in-suit relate to displaying a series of pictures representing portions of a video program.  The Abstracts of the patents-in-suit are the same and state:

> A video indexing system uses pictures representative of a recorded video program to assist a user in determining the contents of a recorded medium without having to view the program itself.  The pictures preferably represent segments of the program which are spaced apart in time, enabling a relatively small number of such pictures to characterize a lengthy program, and are presented in separate windows on the screen of the same device used to display the video program.  The pictures may include still or moving imagery.  A viewer optionally may select a particular picture with a pointing device, to commence replay of the recorded program from that period in the program, or to recall stored audio information so as to assist in identifying the selection.  The picture information may be stored on the same medium as that used to record the video program, or a different medium may be used.

The '219 Patent issued on February 25, 2003, and bears a filing date of November 2, 1995.  The '219 Patent also underwent *ex parte* reexamination.  The reexamination certificate, which issued on September 13, 2011, amended all three independent claims of the '219 Patent.  Defendant aptly summarizes the amendments:

> Before reexamination, the claims required that "information representative of a subset of the images" be stored separately from the video program.  After reexamination, the claims now require that "information including a subset of the images" be stored separately.  As a result of the amendment, the claims require that the actual images must be stored separately; before the amendment, the claims merely required that information representative of the subset of the images be stored separately.

Dkt. No. 51 at 1.

The '239 Patent issued on April 3, 2012, and is a continuation of United States Patent No. 6,574,416 ("the '416 Patent").  The '416 Patent, in turn, is a continuation-in-part of the '219 Patent.

Plaintiff asserts Claims 1 and 3 of the '219 Patent and Claim 4 of the '239 Patent.  The '219 Patent and the '239 Patent share the same figures and written description except that the '239 Patent contains additional disclosure at 11:32-12:14.  For convenience, references to the specification shall be to only the '219 Patent.

## LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *See id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id.*  Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id.*

- 4 -

Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314-15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution

history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent.  *Id.* at 1318.  Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court.  *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.*

## CONSTRUCTION OF AGREED TERMS

The Court hereby notes the following agreed-upon constructions:

| Term | Patent / Claims | Agreed Construction |
|---|---|---|
| "subset of the images" | '219 Patent, Claims 1 & 3 | "less than all of the images of a video program" |
| "storing" | '239 Patent, Claim 4 | "saving to a medium" |
| "display device" | '239 Patent, Claim 4 | "device that allows a user to view the video program" |

Dkt. No. 42, 6/10/2013 Joint Claim Construction and Prehearing Statement Pursuant to P.R. 4-3, Ex. A at 11; Dkt. No. 51 at 17 & 21; Dkt. No. 52 at 10; Dkt. No. 53, Ex. A, 7/25/2013 Joint P.R. 4-5(d) Claim Construction Chart at 1.

## CONSTRUCTION OF DISPUTED TERMS

Shortly before the start of the August 8, 2013 hearing, the Court provided the parties with preliminary constructions of the disputed terms with the aim of focusing the parties' arguments and facilitating discussion.  These preliminary constructions are set forth within the discussion of each term, below.

### A.  "recording"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary (plain language)<br><br>Alternatively:<br>"capturing and storing" | "capturing and storing"[2] |

Dkt. No. 42, Ex. A at 1 (Plaintiff's); Dkt. No. 51 at 2 (Defendant's).  This term appears in Claim 1 of the '219 Patent.  The Court provided the parties with the following preliminary construction: "capturing and storing."

Plaintiff argues that "the intrinsic evidence fails to show that the inventors deviated from the plain and ordinary meaning of the term."  Dkt. No. 45 at 10-11.

Defendant responds that "[t]he Court should construe the term 'recording' to maintain the distinction between the terms 'recording' and 'storing' in the claims."  Dkt. No. 51 at 2.  Defendant "agrees to [Plaintiff's] alternative construction of 'capturing and storing,'" but Defendant notes that "Claim 1 requires the recording of a 'video program' and not just any type of material, making it clear that video images are being recorded."  *Id.* at 3.

___

[2] Defendant originally proposed: "capturing and storing a series of images."  Dkt. No. 42, Ex. A at 1.

In reply, Plaintiff maintains that this term requires no construction but notes that if the Court construes the term, the parties have agreed upon a construction.  Dkt. No. 52 at 10.  The parties confirmed their agreement in this regard at the August 8, 2013 hearing.

Because the parties agree upon a construction, and because that construction would be helpful to the jury, the Court rejects Plaintiff's primary proposal that the term should not be construed.

The Court accordingly hereby construes **"recording"** to mean **"capturing and storing."**

B. **"recorded program"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary (plain language)<br><br>Alternatively:<br>"a sequential set of images that have been captured and stored" | "a sequential set of images that have been captured and stored"[3] |

Dkt. No. 42, Ex. A at 23 (Plaintiff's); Dkt. No. 51 at 8 (Defendant's).  This term appears in Claim 3 of the '219 Patent.  The Court provided the parties with the following preliminary construction: "a sequential set of images that have been captured and stored."

Plaintiff argues that "the intrinsic evidence fails to show that the inventors deviated from the plain and ordinary meaning of the term."  Dkt. No. 45 at 13.  Defendant responds that "[t]he Court should construe this term to make clear that 'recorded program' of dependent claim 3 is the same as the program referred to in independent claim 1 and [Defendant's] revised proposed construction does just that."  Dkt. No. 51 at 9.  In reply, Plaintiff maintains that this term requires no construction but notes that if the Court construes the term, the parties have agreed upon a

---

[3] Defendant originally proposed: "series of time-sequential motion images that have been captured and stored in a storage medium."  Dkt. No. 42, Ex. A at 23.

construction.  Dkt. No. 52 at 10.  The parties confirmed their agreement in this regard at the

August 8, 2013 hearing.

Because the parties agree upon a construction, and because that construction would be

helpful to the jury, the Court rejects Plaintiff's primary proposal that the term should not be

construed.  Also, to the extent, if any, that the parties dispute the antecedent basis for "the

recorded program," the Court hereby finds that "the recorded program" in dependent Claim 3 of

the '219 Patent refers back to "a video program" in the phrase "recording a video program" in

Claim 1 of the '219 Patent.  *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1306

(Fed. Cir. 2005)

The Court accordingly hereby construes **"recorded program"** to mean **"a sequential set

of images that have been captured and stored."**

## C.  "separately storing," "information including a subset of the images," and "separately storing information including a subset of the images"

| "separately storing" | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary (plain language)<br><br>Alternatively:<br><br>"saving to a different region of a medium or to a separate medium"<br><br>or<br><br>"saving to the same medium or to a separate medium"<br><br>(Dkt. No. 52 at 4) | "storing a copy in a different location"<br><br>(Dkt. No. 42, Ex. A at 7) |

| "information including a subset of the images" | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary (plain language)<br><br>Alternatively:<br>"information including less than all of the images of a video program"<br><br>(Dkt. No. 42, Ex. A at 11-12) | "indexing data and less than all of the images of a video program"[4]<br><br>(Dkt. No. 51 at 9) |

| "separately storing information including a subset of the images" | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Defendant submits that Plaintiff "did not submit a construction for the entire phrase 'separately storing information including a subset of the images' but did submit a construction for the phrases separately."<br>(Dkt. No. 51 at 3 n.3)<br><br>Plaintiff replies: "No construction provided by [Plaintiff] because this phrase was not included in the terms the parties agreed should be construed."<br>(Dkt. No. 55 at 2)<br><br>Plaintiff has also submitted: "No construction necessary (plain language)," but "the term is not properly the subject of claim construction before this Court."<br>(Dkt. No. 53, Ex. A at 2 & n.1) | "storing information including a copy of the subset of the images in a different location"<br><br>(Dkt. No. 51 at 3) |

The first of these disputed terms appears in Claim 1 of the '219 Patent and Claim 4 of the

'239 Patent.  The Court provided the parties with the following preliminary construction: "saving

a copy to the same medium or to a separate medium."

---

[4] Defendant originally proposed: "video guide and indexing data and less than all of the images of a video program."  Dkt. No. 42, Ex. A at 11.

The second of these disputed terms appears in Claim 1 of the '219 Patent.  The Court provided the parties with the following preliminary construction: "information including less than all of the images of a video program."

The third of these disputed terms appears in Claim 1 of the '219 Patent.  The Court provided the parties with the following preliminary construction: "No further construction necessary (in light of construction of constituent terms 'separately storing' and 'information including a subset of the images)."

(1)  The Parties' Positions

(a)  "separately storing"

Plaintiff argues that "the intrinsic evidence fails to show that the inventors deviated from the plain and ordinary meaning of the term."  Dkt. No. 45 at 12.  Plaintiff also urges that although the information must be stored apart from the video, the specification specifically discloses saving information to a different location on the same medium.  *Id.*  Plaintiff also argues that there is no basis for requiring two versions of the information, an original and a "copy."  *Id.* at 12-13.

Defendant responds that "[c]onstruction of the entire 'separately storing' phrase of claim 1 of the '219 patent should remove [Plaintiff's] concern that a 'copy' of all the information must be stored."  Dkt. No. 51 at 4.  Defendant explains that it "did not and does not intend that all of the information stored must be a copy.  Rather, [Defendant's] proposed construction provides that the 'subset of the images' must be a copy."  *Id.*  Defendant does argue, however, that "the language of the claims specifies that the storing must be to a location that is not the same as the originally recorded video program (claim 1 of the '219 patent) or stored video program (claim 4 of the '239 patent)."  *Id.*  Defendant also submits that the claims require

"storing a copy of the images in a separate location and not some other 'representative' image or information," as demonstrated by the amendments during reexamination of the '219 Patent. *Id.* at 6.  Finally, as to Plaintiff's proposed construction, Defendant responds that "[t]he word 'region' does not appear in either patent and the boundaries of what would and would not qualify as a 'region' or a 'medium' is unclear and would require further construction." *Id.* at 8.

Plaintiff replies that "the term 'separately storing information including a subset of the images' was not included in the terms that the parties agreed need construction so [Plaintiff] never had the opportunity to propose a construction for this term."  Dkt. No. 52 at 2.  Plaintiff submits that Defendant "provides no factual or legal support for its desire to have this term construed differently in two related claims." *Id.* at 3.  Plaintiff also argues that the disputed terms do not require a different location because "[t]he 'information' simply needs to be stored apart from the video." *Id.* at 4.

(b)  "information including a subset of the images"

Plaintiff argues that "the patent teaches that 'information' may include any data that is separately stored, including, *inter alia*, audio related data."  Dkt. No. 45 at 15.  Plaintiff also argued in its opening brief that "[w]hile the use of the word 'including' in the claim term indicates that at least 'a subset of the images' must exist, it does not require that more than a 'subset of the images' exist." *Id.*

Defendant responds that because the patentee amended Claim 1 of the '219 Patent during reexamination to require "including" in place of "representative of," "the terms 'including' and 'information' must have some purpose in the claim."  Dkt. No. 51 at 9.  Defendant concludes that "including" means that the "information" includes the "subset of the images" as well as something else. *Id.*  Defendant argues that the prosecution history demonstrates that the other

- 12 -

"information" is indexing data.  *Id.* at 10.  Defendant also argues that Plaintiff's "reference to 'audio information' is misplaced" because "[t]he '219 patent only discusses 'audio' in reference to playback of the selected picture."  *Id.*

Plaintiff replies that it is not arguing "that the 'information' may only include 'a subset of the images.'"  Dkt. No. 52 at 4.  Plaintiff also argues that nothing in the patent warrants limiting the word "information" to "indexing data."  *Id.* at 5.

### (c)  The August 8, 2013 Hearing

At the August 8, 2013 hearing, Plaintiff agreed that a copy of the subset of the images must be stored, but Plaintiff urged that the claimed methods do not require creating a "copy" of the other "information."  In other words, although distinct copies of the images must exist, there is no requirement for distinct copies of the other "information."  In response at the hearing, Defendant ultimately agreed with Plaintiff in this regard.

Also at the hearing, Plaintiff acknowledged that the "information" must comprise something more than just the subset of the images.  Plaintiff offered examples such as chapter information or disc title information.  Plaintiff maintained that Defendant's proposal of "indexing information" is too narrow because "indexing" only refers to locations in a video program.  Plaintiff ultimately agreed, however, that the "information" cannot be any conceivable information but instead must be information *related to* video indexing.

Finally, at the hearing, Defendant agreed with the Court's preliminary proposal of the phrase "to the same medium or to a separate medium."

### (2)  Analysis

Claim 1 of the '219 Patent recites (reexamination amendments shown with additions in italics and deletions in bolded square brackets):

1.  A video indexing method, comprising the steps of:
      recording a video program having a sequence of images;
      separately storing information [representative of] *including* a subset of the images, the image subset representing segments of the program which are separated in time; and
      displaying images from the [subset] *information* in separate windows on a display device as a way of identifying the contents of the video program, at least one of the windows displaying a segment including motion imagery.

Claim 4 of the '239 Patent recites (formatting modified, emphasis added):

4.  A video indexing method, comprising the steps of:
      storing a video program having time-sequential frames representative of motion imagery; and
      *separately storing a subset of the frames* associated with segments of the video program that are spaced apart in time;
      wherein separately stored frames of the subset are suitable for display in a plurality of windows on a display device,
      wherein at least one window includes motion imagery,
      wherein at least one window is selectable by a user, and upon selection of a window, the video program is output for display on the display device.

First, as the parties agree, the specification and the prosecution history describe

"separately" storing a subset of images as creating a distinct copy. *See* '219 Patent at 4:2-7,

5:58-6:9 & 6:30-39; Dkt. No. 51, Ex. A, 9/2/1997 Amendment ('219 Patent) at 4; *id.*, Ex. B,

6/9/2011 Response to Office Action ('239 Patent) at 8 & 9; *id.*, Ex. C, 4/1/2011 Amendment in

Response to Office Action (Reexamination of '219 Patent) at 8 & 9; *id.*, Ex. D, 6/9/2011

Response to Office Action ('239 Patent) at 7 (Summary of June 1, 2011 Interview); *id.*, Ex. H,

1/5/2012 Response to Office Action ('239 Patent) at 11.

Second, the claims do not require distinct storage mediums, as Defendant agreed at the

August 8, 2013 hearing and as confirmed by unasserted Claim 1 of the '239 Patent, which recites

"separately storing" on "a first region of a physical medium" and "a second region of the

physical medium." *See Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both

asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a

claim term.").

Third, the patentee cited "indexing information" during prosecution as a basis for

distinguishing the "Mankovitz" reference (United States Patent No. 5,541,738):

> The information provided in the program guide is intended for use in future
> recordings.  There are no provisions for updating or editing the listing information
> contained within the program guide.  Therefore, although the information in the
> guide may be used to schedule the recording of listing programs, *Mankovitz
> discloses no way to generate the kind of indexing information disclosed by
> Applicants, and, in fact, teaches away from recording new indexing information
> as part of a user recording*.

Dkt. No. 51, Ex. E, 10/7/1998 Appeal Brief ('219 Patent) at 7-8 (emphasis added).  On balance,

however, Defendant has failed to demonstrate that the patentee strictly limited the "information"

to "indexing."  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)

("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice

function of the intrinsic evidence and protects the public's reliance on *definitive* statements made

during prosecution.") (emphasis added).  For example, the specification discloses recording

"supplemental information," "such as a tape/disc or program storage medium identification

number (recorded on a periodic or continuous basis), and/or frame indexing data, time codes or

other pertinent information facilitating more convenient access to particular portions of the

program material."  '219 Patent at 7:19-25.

Finally, in order to clarify that only the subset of the images must be copied, the Court

construes the larger terms in Claim 1 of the '219 Patent ("separately storing information

including a subset of the images") and Claim 4 of the '239 Patent ("separately storing a subset of

the frames").  At the August 8, 2013 hearing, Plaintiff agreed that construing the larger terms in

each claim would be appropriate.  The constituent terms "separately storing" and "information

including a subset of the images" therefore need not be construed separately.  The Court

accordingly hereby construes the larger terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"separately storing information including a subset of the images"**<br><br>('219 Patent, Claim 1) | **"saving information related to video indexing, including a copy of less than all of the images of the video program, to the same medium or to a separate medium"** |
| **"separately storing a subset of the frames"**<br><br>('239 Patent, Claim 4) | **"saving a copy of less than all of the frames of the video program to the same medium or to a separate medium"** |

**D.  "windows"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary (plain language)<br><br>Alternatively:<br>"viewing areas" | "scrollable viewing areas on a screen capable of displaying motion imagery" |

Dkt. No. 42, Ex. A at 13.  This term appears in Claim 1 of the '219 Patent and Claim 4 of the

'239 Patent.  The Court provided the parties with the following preliminary construction:

"viewing areas."

   (1)  The Parties' Positions

      Plaintiff argues that the term "window" "is a plain English word that is easily understood

by a lay person."  Dkt. No. 45 at 15.  Plaintiff submits that the intrinsic evidence does not refer to

"scrollable" and "specifically discusses windows being used on things other than a 'screen,'

including, inter alia, 'displays.'"  *Id.* at 16.  Plaintiff further argues that the word "screen" would

"open[] the door to endless arguments concerning the definition of a 'screen' while at the same

time adding no clarity to the claims."  *Id.*

Defendant responds that "[t]he term 'windows' was a term of art and at the time of filing of the '219 patent had a particular meaning to a person of ordinary skill in the art" that differs from the meaning that the term has today.  Dkt. No. 51 at 11.  Defendant explains that "[w]hile the patents-in-suit intersperse the term 'windows' throughout the patents, the patentees do not define the term," and so "[t]he patentees chose to rely on the meaning that a person of ordinary skill in the art would have in 1995 and that is the meaning [Defendant] proposes."  *Id.* at 12.

Plaintiff replies that the specification contains no indication of scrolling or a scroll bar and that several technical dictionary definitions, as well as a construction by the Court of Appeals for the Federal Circuit of the same term in a contemporaneous patent, contain no scrolling requirement.  Dkt. No. 52 at 5-6.

At the August 8, 2013 hearing, Defendant further argued that "viewing areas" would be overbroad because it would encompass, for example, the desktop of a Microsoft Windows operating system and, even farther afield, the windows on a building.

(2)  Analysis

The specification discloses:

To convey motion in different *windows* on the display device, the picture memory stores not one but a series of images associated with each of the time-separated segments of the program, and further includes means for periodically updating the frame buffer with individual images from a particular group, so as to convey motion.

* * *

Given a display with a "safe action area" of 432 lines each having 576 pixels (which is, again, a sampling area associated with a typical NTSC frame having square pixels), if each thumbnail image to be shown is allocated a display area of 144x108 pixels, sixteen such images readily may be displayed, each having a framing border and optionally providing space for one or more lines of textual information.

'219 Patent at 2:41-46 & 4:58-64 (emphasis added).

As to extrinsic evidence, Defendant cites a technical dictionary definition of "window" as: "A scrollable viewing area on screen."  Dkt. No. 51, Ex. F, Alan Freedman, *The Computer Glossary* 436 (7th ed. 1995).  Plaintiff, however, has cited several technical dictionary definitions for "window" that do not refer to scrolling, such as:

> A rectangular area on a visual display screen, used to hold the information relating to a particular aspect of an application currently in operation.  Windows overlap one another on the screen as if they were sheets of paper overlapping one another on a desk.  The topmost window represents the application with which the user is currently working.  A particular window can be brought to the top of the "pile" by selecting menu options or by moving the cursor to a chosen window and clicking the mouse button.

Dkt. No. 52, Ex. D, *A Dictionary of Information Technology and Computer Science* 332-33 (2d ed. 1993); *id.*, Ex. A, *Microsoft Press Computer Dictionary* 417 (2d ed. 1994) (defining "window" to mean "a portion of the screen that can contain its own document or message" or "a software tool for scaling (sizing) an image to fit within certain boundaries on the display screen"); *id.*, Ex. B, *The New IEEE Standard Dictionary of Electrical and Electronics Terms* 1492 (1993) (defining "windows" for computer graphics to mean "[a] region of a two-dimensional world coordinate system that is to be visible as the display image"); *id.*, Ex. C, *The IEEE Standard Dictionary of Electrical and Electronics Terms* 1205 (6th ed. 1996) (giving four relevant definitions for "window," none of which mention scrollability or a scroll bar); *see Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 19, 21-22 (Fed. Cir. 2000) (affirming construction of "window" as "a framing device on the computer screen that displays information and may set the displayed information apart from other information on the screen").

"Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources

have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention." *Phillips*, 415 F.3d at 1318.

On balance, however, the intrinsic evidence sets forth no "scrollability" limitation, and Defendant has failed to identify any intrinsic anchor for bringing in such a limitation from an extrinsic source. *See Phillips*, 415 F.3d at 1321 (noting that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification"); *id.* at 1322 ("A claim should not rise or fall based upon the preferences of a particular dictionary editor, or the court's independent decision, uninformed by the specification, to rely on one dictionary rather than another."). Also, Defendant's proposal of "motion imagery" is redundant of other claim language that explicitly recites motion imagery. *See U.S. Surgical*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy.").  Defendant's proposed construction is therefore hereby expressly rejected.

Finally, although Defendant has not demonstrated that the word "screen" must be included in the construction of "windows," the parties agreed at the August 8, 2013 hearing that the "windows" are shown on a screen of the display device recited in the claims. *See* '219 Patent at 1:61-63 ("The same display device used for viewing the program material may be used to display the pictures, which preferably are presented in separate windows on the *screen*.") (emphasis added).

The Court therefore hereby construes **"windows"** to mean **"viewing areas."**

**E. "user"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary (plain language)<br><br>Alternatively:<br>"a person"[5] | "the person that causes the steps of the program to be performed" |

Dkt. No. 42, Ex. A at 31-32; Dkt. No. 52 at 6 (Plaintiff's).  This term appears in Claim 4 of the

'239 Patent.  The Court provided the parties with the following preliminary construction: "a

person."  Both sides agreed to this construction at the August 8, 2013 hearing.  The Court

therefore hereby construes **"user"** to mean **"a person."**

**F. "user-selecting a displayed image"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary (plain language)<br><br>Alternatively:<br>"selecting, by a person, a displayed image"[6] | "selecting, by a person, a displayed image" |

Dkt. No. 42, Ex. A at 21; Dkt. No. 52 at 10 (Plaintiff's).  This disputed term appears in Claim 3

of the '219 Patent.  The Court provided the parties with the following preliminary construction:

"Plain and ordinary meaning."  Both sides agreed to this construction at the August 8, 2013

hearing.  The Court therefore hereby construes **"user-selecting a displayed image"** to have its

**plain and ordinary meaning** in light of the Court's construction of the constituent term "user,"

above.

---

[5] Plaintiff previously proposed as its alternative: "a person, a person using an electronic device, an electronic device, or electronic devices."  Dkt. No. 42, Ex. A at 31-32.  That alternative proposal also appears in the parties' Joint P.R. 4-5(d) Claim Construction Chart.  Dkt. No. 53, Ex. A at 4.

[6] Plaintiff originally proposed: "selecting, by a person, a person using an electronic device, an electronic device, or electronic devices, a displayed image."  Dkt. No. 42, Ex. A at 21.

**G.  "segments of the program which are separated in time" and "segments of the video program that are spaced apart in time"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "series of images selected from different time periods of the video program" | "respective series of images selected from different time periods of the video program" |

Dkt. No. 42, Ex. A at 12 & 29.  The first of these disputed terms appears in Claim 1 of the '219 Patent.  The second of these disputed terms appears in Claim 4 of the '239 Patent.  The parties agree that these two disputed terms should be given the same construction.  Dkt. No. 45 at 18. The Court provided the parties with the following preliminary construction: "series of images selected from different time periods of the video program."

(1)  The Parties' Positions

Plaintiff argues that "Defendant wishes to inject the word 'respective' in its construction in order to establish its belief that the referenced segments of the program are distinct and may not overlap."  Dkt. No. 45 at 18.  Plaintiff also submits that Defendant's use of "respective" "is confusing and will simply confuse the jury."  *Id.* at 19.

Defendant responds that "[t]he use of the word 'respective' in [Defendant's] construction makes clear that each segment from the video program is from a distinct time period," such that "no two segments contain[] the same images or overlapping time periods."  Dkt. No. 51 at 16. Defendant argues that "[Plaintiff's] construction would allow segments from different time periods to be mixed and matched which would only lead to confusing the user attempting to view the segments in windows on the display device."  *Id.*

Plaintiff replies that "the segments must be from different time periods, which both [of the parties' proposed] constructions account for without adding the word 'respective.'"  Dkt. No. 52 at 7.  Plaintiff nonetheless maintains that "[a]lthough [Defendant's] Response attempts to

use the specification to demonstrate that time period[s] must not overlap, none of the citations [Defendant] provides actually support that notion."  *Id.*

At the August 8, 2013 hearing, Defendant suggested that its potentially cryptic proposal of "respective" could be clarified by instead referring to "non-overlapping" time periods.

(2)  Analysis

Claim 4 of the '239 Patent is representative and recites, in relevant part: "separately storing a subset of the frames associated with segments of the video program that are spaced apart in time . . . ."  The specification refers to images associated with "time-separated segments":

> In a comprehensive embodiment, the hardware includes a picture memory (such as a battery-backed-up random-access memory) for storing the *images associated with each of the time-separated segments of the program*, a frame buffer in communication with the picture memory and display device, and video display generation means for outputting the contents of the frame buffer to the display device in the form of a video signal.
>
> * * *
>
> To convey motion in different windows on the display device, the picture memory stores not one but a *series of images associated with each of the time-separated segments of the program*, and further includes means for periodically updating the frame buffer with individual images from a particular group, so as to convey motion.

'219 Patent at 2:33-46 (emphasis added).  Further, although the patents-in-suit disclose an embodiment in which segments appear to be non-overlapping, the specification uses the terms "separated in time" and "spaced apart in time" to refer to separation between segment starting points rather than to separation between non-overlapping segments:

> Preferably, the pictures represent periods of the program which are *separated in time*, enabling a relatively few such pictures to characterize an otherwise lengthy program.  By way of example, *12 pictures*, each representing segments in the program which are *spaced apart in time by 10 minutes*, may be used to identify and/or index a *2-hour movie*.

*Id.* at 1:55-61 (emphasis added).

Thus, although these disclosures and the claim language demonstrate that two identical segments, covering identical time periods of a video program, would not be "separated in time" or "spaced apart in time," the patents-in-suit do not explicitly prohibit, or even discourage, overlap between segments.  On balance, Defendant has failed to identify any "intentional disclaimer, or disavowal, of claim scope by the inventor" as to overlap.  *Phillips*, 415 F.3d at 1316.  The Court therefore hereby expressly rejects Defendant's proposals of "respective" and "non-overlapping" and any other argument that would preclude overlap between segments.

The Court accordingly hereby construes **"segments of the program which are separated in time"** and **"segments of the video program that are spaced apart in time"** to mean **"series of images selected from different time periods of the video program."**

## H.  "subset of the frames"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| "less than all of the pictures of the video program"<br><br>Alternatively:<br>"less than all of the images of the video program" | "less than all of the frames of the video program" |

Dkt. No. 42, Ex. A at 27; Dkt. No. 52 at 7-8 (Plaintiff's alternative proposal).  This term appears in Claim 4 of the '239 Patent.  The Court provided the parties with the following preliminary construction: "less than all of the frames of the video program."  Both sides agreed to this construction at the August 8, 2013 hearing.  The Court therefore hereby construes **"subset of the frames"** to mean **"less than all of the frames of the video program."**

## I.  "motion imagery" and "segment including motion imagery"

| "motion imagery" | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "sequential images as opposed to still images"[7] | "a few seconds or more of sequential motion images as opposed to still images"[8] |
| "segment including motion imagery" | |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "series of sequential motion images of the video program" | "series of a few seconds or more of sequential motion images as opposed to still images"[9] |

Dkt. No. 45 at 18 & 22 (Plaintiff's); Dkt. No. 51 at 18 (Defendant's).

The first disputed term appears in Claim 1 of the '219 Patent and Claim 4 of the '239 Patent.  The Court provided the parties with the following preliminary construction: "series of sequential images as opposed to a still image."

The second disputed term appears in Claim 1 of the '219 Patent.  The Court provided the parties with the following preliminary construction: "No further construction necessary (in light of construction of 'motion imagery')."

(1)  The Parties' Positions

Plaintiff argues that "the requirement of 'a few second[s] or more' has no support in the specification."  Dkt. No. 45 at 20.

---

[7] Plaintiff originally proposed: "sequential *motion* images as opposed to still images."  Dkt. No. 42, Ex. A at 18 (emphasis added).

[8] Defendant originally proposed: "a few seconds or more of *time-sequential* motion images as opposed to still images."  Dkt. No. 42, Ex. A at 18 (emphasis added).

[9] Defendant originally proposed: "series of time-sequential motion images of the video program."  Dkt. No. 42, Ex. A at 22.

Defendant responds that the specification discloses motion imagery as being "a few seconds," and "[d]isplaying only two or just a few frames may not be enough to depict motion imagery to a user."  Dkt. No. 51 at 19.  In other words, Defendant explains, "[a] person would not be able to discern any movement and the window would simply look as if it contained a still image unless motion imagery of such a length was provided such that any person could observe the motion."  *Id.*

Plaintiff replies that "it is clear that the two parts of the specification that mention 'a few seconds' [are] not intended to limit the invention" and instead are "merely exemplary."  Dkt. No. 52 at 9.  Plaintiff argues that Defendant's assertion "that motion cannot be adequately expressed in less than 3 seconds of video" "has absolutely no basis in reality."  *Id.*

At the August 8, 2013 hearing, the parties addressed issues such as whether "motion imagery" requires depicting continuous movement (as opposed to displaying a sequence of images from different scenes) and the degree to which motion must be apparent (as opposed to being present but imperceptible).  In the end, Plaintiff proposed "a series of sequential images sufficient to indicate motion."  Defendant was agreeable but proposed adding the phrase "to a user" at the end of Plaintiff's proposal, wherein "a user" means "a person," as the parties have agreed.  Plaintiff replied that Defendant's proposed addition was "probably fair."

<u>(2)  Analysis</u>

The specification discloses:

> As an alternative to the storage and display of still pictures associated with the recorded program material, each window instead may include *motion imagery representing a few seconds of the recorded material* at that particular time.
>
> * * *
>
> In order to generate such motion imagery, many of the steps just described would continue to be used, however, at the time associated with sampling the source

material, not one but *a few or numerous frames* would be recorded and later displayed in such a manner that each window could communicate *a few seconds or more of "action"* which would then be repeated, much as the movement of hurricanes and cloud formations is depicted in televised satellite weather forecasts.

* * *

In order to generate such windows with *motion*, pictures are retrieved from the memory means 326 and delivered to the video generator/frame buffer block 362, in accordance with a predetermined update rate.  In order to reduce bandwidth requirements along path 364, each displayed window may be updated on a sequential basis, resulting in the movements in the various windows being "out-of-sync" with one another; however, it will be straightforward for the viewer to interpret the images.  That is, for example, the contents of picture memory means 326 may be sampled with respect to the contents of window No. 1, causing *motion* to appear in that window, while displaying all other windows as they were in the previous frames.  Next, the memory means 326 may be sampled and window No. 2 updated, causing relative *motion* therein to be perceived, while continuing to present the information in all other windows without change, including window No. 1, and so on.

'219 Patent at 10:27-30, 10:36-44 & 10:50-65 (emphasis added).

On balance, to whatever extent Defendant maintains its proposal to require a "few seconds or more" as described regarding exemplary embodiments in the specification, Defendant's proposed construction is hereby expressly rejected.  *See Comark Commc'ns*, 156 F.3d at 1187 ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.") (quoting *Constant*, 848 F.2d at 1571); *see also Phillips*, 415 F.3d at 1323.

The Court therefore adopts the language suggested by Plaintiff at the August 8, 2013 hearing, as set forth above, together with Defendant's proposed addition.  Also, because the parties did not identify any distinction between their proposals of "sequential images" and a "series of" sequential images, or any relevant significance of the claim phrase "segment

- 26 -

including," the Court construes "motion imagery" and "segment including motion imagery" to have the same construction.

The Court therefore hereby construes **"motion imagery"** in Claim 4 of the '239 Patent and **"segment including motion imagery"** in Claim 1 of the '219 Patent to mean **"series of sequential images sufficient to indicate motion to a person."**

## J. "video program"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "sequential set of images which form a moving picture" | "sequential set of images of previously recorded video material" |

Dkt. No. 42, Ex. A at 3. This term appears in Claim 1 of the '219 Patent and Claim 4 of the '239 Patent. The Court provided the parties with the following preliminary construction: "Plain and ordinary meaning; explicitly reject 'previously recorded video material' requirement."

(1) The Parties' Positions

Plaintiff argues that "at the time of the invention, video programs were broadcast from, among other sources, news stations via cable, satellite, and by other means," and "[a]lthough such video programs could have been pre-recorded, they also could have been live." Dkt. No. 45 at 22.

Defendant responds that "a 'program' is already existing material that can then be copied or otherwise manipulated." Dkt. No. 51 at 20. Defendant argues that because "[u]nder [Plaintiff's] construction, any video would be a video program," "[Plaintiff's] construction erases the word 'program' from the claims." *Id.*

Plaintiff replies that "[w]hile it is true that the video program would have to be eventually stored on a medium to create the video index, there is no requirement that the source video program be pre-recorded." Dkt. No. 52 at 10. To the contrary, Plaintiff argues, "program"

guides have often included listings of video programs that were broadcast "live," such as "Saturday Night Live." *Id.* Plaintiff nonetheless notes that "both parties agree that more words than 'sequential set of images' are needed to describe a video program." *Id.*

At the August 8, 2013 hearing, Defendant urged that the term "video program" should not encompass, for example, the images displayed on the viewfinder screen of a typical digital camera. Defendant also cited disclosures, in the specification, of indexing a library of video tapes that have already been recorded. *See, e.g.,* '219 Patent at 1:14-26, 5:6-8, 6:49-55 & 7:13-52. Plaintiff responded that the "recording" step has nothing to do with whether the source material, that is, the "video program," is pre-recorded or is being recorded "live."

(2)  Analysis

Claim 1 of the '219 Patent recites (reproduced without showing the pre-reexamination language that was modified; emphasis added):

> 1. A video indexing method, comprising the steps of:
>     recording a *video program* having a sequence of images;
>     separately storing information including a subset of the images, the image subset representing segments of the program which are separated in time; and
>     displaying images from the information in separate windows on a display device as a way of identifying the contents of the video program, at least one of the windows displaying a segment including motion imagery.

The Summary of the Invention states:

> *Considering a video program as a sequential set of images* the invention prescribes separately storing information representative of a small subset of the images and displaying images from this subset as a method of identifying the contents of the video program.

'219 Patent at 1:50-55 (emphasis added). The specification refers to "video programs" as being received from elsewhere by way of "channels":

> In this embodiment which supports moving pictures in multiple windows, a multi-channel tuner may be added and sequenced so that pictures representative of the

> *video programs available on each of the tuned channels* will appear in the
> separate windows, rather than indexing information.

*Id.* at 2:46-51 (emphasis added).  The specification does not limit the nature of the programming

available on these channels, such as whether the programming is "live" or pre-recorded.

On balance, Defendant has failed to identify any definitive statements in the specification

or the prosecution history that would warrant limiting the term "video program" to pre-recorded

video programs.  *See Omega Eng'g*, 334 F.3d at 1324 ("As a basic principle of claim

interpretation, prosecution disclaimer promotes the public notice function of the intrinsic

evidence and protects the public's reliance on *definitive* statements made during prosecution.")

(emphasis added).  Thus, the Court explicitly rejects Defendant's proposal of "previously

recorded video material."

The Court therefore hereby construes **"video program"** to mean **"sequential set of

images that form a moving picture."**

## K.  **"time-sequential frames representative of motion imagery"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "time-sequential pictures representative of sequential motion images" <br><br> Alternatively: <br> "time-sequential images representative of sequential motion images" | No construction necessary |

Dkt. No. 42, Ex. A at 25; Dkt. No. 52 at 8 (Plaintiff's alternative proposal).  This term appears in

Claim 4 of the '239 Patent.  The Court provided the parties with the following preliminary

construction: "Plain and ordinary meaning."  Both sides agreed to this construction at the

August 8, 2013 hearing.  The Court therefore hereby construes **"time-sequential frames

representative of motion imagery"** to have its **plain and ordinary meaning**.

## CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 15th day of October, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE